THE plaintiffs femes and the defendent were the children of William Allen, by second wife.
His son, by a former wife, John Allen, bj"- his testament, which was dated in may, 1783, devised all his estate to his father, and died in may, 1793, being seized of lands of inheritance acquired after the date of his testament.
William Allen, the father, in September, 1789, made his testament, containing devises of lands, and a bequest of the residue of his estate after some specific and pecuniary legacies, to his sons, and died in July, 1793.
By statute, passed in 1785, to be in force from and after the first day of january 1787, was enacted, that when any person having title to real estate of inheritance shall die intestate as to such estate, it shall descend to his children, if any there be: if there be no children, nor their descendents, then to his father; if there be no father, then to his mother, brothers and sisters, and their descendents, or such of them as there be.
*On the 8 day december, 1792, a statute was made, to reduce into one the several acts directing the course of descents, the words of it are the same as the words before rehearsed of the statute of 1785. a subsequent section of it (22) is in these words: all and every act and acts, clauses and parts of acts heretofore made containing any thing within the purview of this act shall be and the same are hereby repealed, this act by the last section of it is to commence in force from the passing thereof.
In the same session, on the 28 day of the same december, 1792, a statute was made, by which the operation of several acts of that session, among which is the foremen-tioned statute of the 8 day of december, was suspended until the first day of October, 1793.
By statute passed in november, 1789, whensoever one law, which shall have repealed another law, shall be itself repealed, the former law, shall not be revived without express words to that effect, (a)
William Allen having died whilst the operation of the statute of the 8 day of de-cember, 1792, which is supposed to have repealed the statute of 1785, was suspended; whether during that period the common law which excluded the daughters from a participation of the fathers inheritance with their brother was restored, so that he alone succeeded to the lands the devise whereof to John Allen was ineffectual by his death in the testators life time? was the question argued by counsil.
A second question occuring in the case is, whether by the devise in the testament of John Allen of all his estates to his father, the lands acquired after the date of the testament were transferred? this question dependeth upon the principles which govern the decision of the first, as inspection of the statutes of 1785, chap. 63, of the 13 day of december, 1792, intituled an act reducing into one the several acts concerning wills, &c. and of the forementioned 28 day of december, in that session, will shew, and
A third question is, whether John Allens *272 after acquired lands, if they were not transferred by his testament, descended to his ^father? which will be resolved by the resolution of the first question ; so that the discussion of this shall suffice for all.
By the court, 27 day of September, 1794.
I. The statute of 1785 was not repealed by the statute of the 8 day of december, 1792.
II. The statute of 1785, if it were repealed by the statute of the 8 day of december, 1792, remained during twenty days only repealed, being at the end of that period recuScitated by the statute of 28 -day of december, 1792.
I. The statute of 1785 was not repealed by the statute of 8 day of december, 1792, as to the subject of the present litigation, because both statutes, being in the same words, have the same meaning.
A statute is the legislative will.
If the lawmakers of any country assembling will, for example, that in the occupation and enjoyment of things, the dying owner whereof shall not have appointed a successor, his children, or their descendents, or, if he be childless, his father, or if fatherless, his mother, brothers and sisters, &c. shall succeed to him, this will would be a law, if it. were only registered in the memories of those by whom and for whom it was ordained, no less than if the words which signified it, cut in wood, or engraved on stone or brass, were exposed to the view of all, or inscribed' or impressed on paper or parchment, were deposited among the popular archives.
Surely laws of civil institution might be established, if the arts or writing, sculpture and printing had not been invented.
They are indeed exceedingly beneficial, enabling men to preserve the records of acts necessary to be known by monuments more faithful than tradition, more intelligible than hieroglyphics, for which those arts have been happily substituted.
But the columns, or tables, or folios, or skins which exhibit the words signifying the will of the legislature are not theirselves the legislative will — are not the statutes.
A statute being the legislative will, the repeal of a statute is a change of the legislative will.
The lawmakers then, in 1785, having-willed that all a mans children, or, if he had not children, his father, or, if the father were dead, his mother, brothers and sisters, &c. should succeed to his unde-vised lands of inheritance; and that this should be the law, after the first day of january, 1787; and having on the 8 day of december, 1792, willed that all a mans children, &c. should succeed to his undevised lands of inheritance, rehearsing the identical words contained in the statute of 1785; *when after this the legislature added that the statute of 1785 was and should be repealed, what could they mean?
We cannot suppose them to have meaned that the will of the legislature had changed between 1785 and the 8 day of december, 1792. the fact is proved to be otherwise by the continuance in force of the statute, which alone can indicate a continuance of the legislative will.
The legislative will could not alter between repealing one statute and enacting the other, because no time intervened— they were simul ac semel, they were both, if the former were at all, uno flatu, in the same breath.
The only other meaning of the repealing section is that the legislative will was changed in 1792. but that meaning is repugnant to the statute which containeth the repealing section, and which willeth the same course of descent which the statute of 1785 willed.
The repealing section therefore is rejected, except in cases where the statute made in 1785 is altered by subsequent statutes, among which cases is not the present case of sisters demanding a partition with a brother.
II. The statutes of 1785, if it were repealed by that of the 8 day of december, 1792, was resuscitated by the statute of the same session.
This, as is believed, must be manifest to him who will translate the language of the three statutes into equivalent terms with such explications of them by way of paraphrase as are evidently requisite to adapt a law in general terms to particular cases; for
Then it would be read thus: the operation of the act passed during the present session, by which an act passed in the year 1785, directing that lands of inheritance shall descend to all the children of an owner dying intestate, &c. was repealed, is suspended until the first day of October, 1793. and consequently until that time the statutes said to be repealed would not be repealed, unless it was between the 8 and 28 day of december, 1792.*
Decree for the plain tiffs. †

 Hence was inferred by the counsil for the defendent, that suspension of the operation of the statute made the 8 day of december 1792, did not revive the statute of 1785; a suspension differing from a repeal in their duration only, that of one being for a limited, of the other for an indefinite, period, to which the plaintiffs counsil retorted, the act of 1785 repealed the common law, by which the defendent would exclude his sisters from shares of his fathers lands of inheritance, and by repeal of that act the common law was not restored, any more than the act of 1785 was revived by suspension of the act which repealed it — N ote m edition of 1795.

See appendix. — Note in edition of 1852.

[This decree was, in 1802, affirmed by the Court of Appeals. See the Report in 3 Call 289, and cases there cited. — Ed.]—Note in edition of 1852.